## TURNPIKE COMPANY *v.* ILLINOIS.

1. By analogy to the rule of the common law, that a grant to a natural person, without words of inheritance, creates only an estate for his life, a grant of a franchise, without words of perpetuity, to a corporation aggregate, whose duration is limited, creates only an estate for its life.

2. By an act of the legislature of Illinois, approved Feb. 13, 1847, a turnpike company was created a body corporate, to continue as such for twenty-five years from that date, with power to construct and maintain a certain turnpike, erect toll-gates, and collect tolls. The State reserved the right to purchase the road at the expiration of the charter, by paying to the corporation the original cost of construction ; but the road, with all its appendages, was to remain in the possession of the corporation, to be used and controlled, subject to the rights and restrictions contained in the charter, until such time as the State should refund said cost. By a supplement passed in 1861, the company was authorized to extend its road ; and, in consideration of keeping in repair a certain bridge and dyke, to use them as a part of the road, erect a toll-gate thereon, and collect tolls. The responsibility of the company did not, however, extend to the destruction of the dyke by high floods. *Held*, 1. That the provision whereby, on the failure of the State, at the expiration of twenty-five years, to refund the original cost of the road, the company was authorized to continue in the exercise of its franchises until they should be redeemed by paying such cost, extended only to the charter, and not to the supplement of 1861. 2. That the supplement merely granted to the company the use of the bridge and dyke, and that the franchise to charge tolls thereon was separate and distinct from that authorizing the collection of them on the original road, and did not extend beyond the term of years for which the corporation had been created. 3. That, at the expiration of that term, the State, by resuming the control of the bridge and dyke without compensation to the company, did not impair the obligation of her contract with the company.

3 *Quære*, Whether, if the company had been authorized to construct the bridge and dyke, and had done so, or to acquire a proprietary interest in the property in fee, and had acquired it, the State could have taken back the property without just compensation.

4. A grant of franchises and special privileges is to be construed most strongly against the donee and in favor of the public.

ERROR to the Supreme Court of the State of Illinois.

This was a proceeding by information in the nature of a *quo warranto*, instituted on the 13th of October, 1873, in the St. Clair County Circuit Court, Illinois, by the people of the State of Illinois, on the relation of one Bowman, against the St. Clair County Turnpike Company, charging it with unlawfully holding and exercising, without warrant therefor, the franchise of maintaining a toll-gate near Cahokia Creek, upon a street in the city of East St. Louis, called Dyke Avenue, and collecting tolls for passing through the same on said street. The company justified under its charter, or act of incorporation, and several supplements thereto. The plaintiff replied that the land occupied by Dyke Avenue had been dedicated by the owners thereof to the city of East St. Louis, as a public street, and that the legislature, by an act passed March 26, 1869, had granted to the said city exclusive power and control over said Dyke Avenue, and imposed upon it the sole right and duty of grading, filling up, paving, sewering, and otherwise improving and keeping said street in repair, and the right to abate and remove obstructions therefrom. The company demurred, and insisted that this last-mentioned act of the legislature impaired the obligation of the contract made with itself in and by its said charter and the supplements thereto. The County Court, and the Supreme Court of the State, on appeal, held the justification of the company to be insufficient, and gave judgment of ouster.

The company then sued out this writ of error.

The statutes of Illinois bearing upon the question are set forth in the opinion of the court.

*Mr. John W. Noble* and *Mr. John C. Orrick* for the plaintiff in error.

The object of the supplement to the charter was to confer a benefit on the company, and, upon the same terms, to add to the franchises previously existing. *Pruffett et al.* v. *Great Western Railroad Co.*, 25 Ill. 353; *Commonwealth* v. *Hancock Free Bridge Co.*, 2 Gray (Mass.), 58; *Attorney-General* v. *Germantown, &c. Turnpike Co.*, 55 Pa. St. 466; *Canal Bridge* v. *Gordon*, 1 Pick. (Mass.) 297; *Willink* v. *Morris Canal*, 3 Green (N. J.), Ch. 377.

Admitting that the right granted to the corporation by the

supplement of 1861 was that of the toll-gate on Dyke Avenue, that right, by virtue of the seventeenth section of the charter, continued as long as the corporation; and its purchase by the State was as much a condition precedent to its extinguishment as is the purchase of any other right conferred by the charter. An attempt to extinguish it in any other manner impairs the obligation of the contract contained in the charter, and is unconstitutional and void:

*Mr. James K. Edsall*, Attorney-General of Illinois, *contra.*

If the Supreme Court of Illinois was correct in its construction of the act of 1847, and that of 1861, the franchise to collect tolls on Dyke Avenue expired in 1872; and this court will not inquire whether that construction was correct or not. *Insurance Company* v. *The Treasurer*, 11 Wall. 204; *Kennebec Railroad* v. *Portland Railroad*, 14 id. 23.

The construction given to those acts was the true one. Sedgwick, Const. Law, 338, 339, 342; Angell, Highways, 358; Angell & Ames, Corp. 66; 2 Kent, Com. 276, 298; *Pennsylvania Railroad Co.* v. *Canal Com'rs*, 21 Pa. 9; *Canisius* v. *Merril*, 65 Ill. 67; *Chesnutwood* v. *Hood*, 68 id. 132; *Charles River Bridge* v. *Warren Bridge et al.*, 11 Pet. 420; *Dubuque & Pacific Railroad Co.* v. *Litchfield*, 23 How. 66; *Stormfellz* v. *Turnpike Company*, 13 Pa. St. 555.

Mr. Justice Bradley delivered the opinion of the court.

The question before us is, whether any contract was set up by the defendant company, now plaintiff in error, in its justification, which has been impaired by the subsequent legislation of the State.

The charter of the company, as set out in its plea of justification, was an act of the legislature of Illinois, approved Feb. 13, 1847, entitled "An Act to incorporate the Saint Clair County Turnpike Company."

By the first section of this act it was enacted as follows: —

"That all such persons as shall become stockholders, agreeably to the provisions of this act, in the corporation hereby created, shall, and for the term of twenty-five years from and after the passage of this act, continue to be a body corporate and politic, by the name of ' St. Clair County Turnpike Company,' and by that name shall have

succession for the term of years above specified; may sue and be sued, complain and defend, in any court of law or equity; may make and use a common seal," &c., conferring the usual corporate powers.

By the second section it was enacted as follows: —

" The said corporation shall have the right to construct and maintain a turnpike road from the bank of the Mississippi River opposite the city of St. Louis, to High Street, in Belleville, St. Clair County, Illinois; said road to be made on the great western mail route."

Provision was then made for erecting certain toll-gates on the line of the road, and a schedule of tolls was prescribed.

The fifteenth section of the charter is in the following words: —

" The State reserves the right to purchase said road at the expiration of said charter, by paying to said corporation the original cost of said road, laid out and expended in constructing the same, to be ascertained by examination of the books of said corporation, by commissioners to be appointed by the legislature; and, in case of non-payment or redemption by the State at the expiration of the charter, the said road, with all its appendages, shall remain in the possession of said corporation, to be used, controlled, and possessed under the rights and restrictions in this charter contained, and may demand and receive tolls as herein stated, until such time as the State shall refund said sum of money, the original cost of construction, and which right the State hereby reserves."

The seventeenth and last section was as follows: —

" The corporation hereby created shall be safe and secure for and during the term of the charter, and until the road shall be redeemed by the State as provided, in all the rights, interests, and privileges granted and intended to be conferred to said company by the strict letter and meaning thereof, the corporation complying strictly, clearly, and fully on their part."

It is conceded that the original route of the turnpike, as located under the second section, did not embrace Dyke Avenue, where the toll-gate complained of has been erected. That avenue extends from Cahokia Creek to the present bank of the river, and is connected, by a bridge across Cahokia Creek, with the turnpike as originally located.

A supplement to the charter was passed Feb. 16, 1861, the second section of which was as follows:—.

" The St. Clair County Turnpike Company is hereby authorized to extend their road across Cahokia Creek, using the bridge over said creek which connects the St. Clair County Turnpike Company with the dyke on Bloody Island, and over said dyke to its western shore opposite the city of St. Louis; and shall keep the road on said dyke and bridge in good repair, and build a new bridge if the present one should float away or become unsafe for travelling, but shall not be held responsible for any destruction of the dyke by high floods; and the said company is hereby authorized to erect a toll-gate on said dyke, or on or near said bridge, and collect the following rates of toll, viz.:" [Certain tolls being then prescribed.]

It is by virtue of this act that the defendant claims the right to erect and maintain the toll-gate, and to exact the tolls in question.

The term of the charter expired in 1872; but the defendant, in its plea, alleged that the State had never yet redeemed the franchises granted to it, nor paid, or offered to pay, the costs of constructing the turnpike, or attempted to exercise the right reserved in the fifteenth section of the charter. The question is, whether, by virtue of this section, the company is entitled to hold possession of and take tolls on Dyke Avenue, as well as on the original line of its road. The Supreme Court of Illinois held that it is not entitled to do so as against the State, or as against the city of East St. Louis, claiming under the authority of the State. It held that the dyke and the bridge over Cahokia Creek never became the property of the corporation: that their use merely was granted to it; so that it cannot be said that they form a part of the road constructed by the corporation, which the State, in electing to take its road, would have to pay for; that the franchise of charging tolls for their use is entirely distinct and separate from the franchise of charging tolls for the use of the road constructed by the corporation; and that the fair construction of the act of 1861 is, that it was designed that the corporation should have the use of the bridge and dyke, with the right to charge tolls thereon, until the period fixed for the termination of the corporation and the taking of control of its road by the State, and no longer.

In this view we concur. The original charter of the company gave it the right, in consideration of building the turnpike authorized thereby, and of keeping it in repair, to erect certain toll-gates, and to exact certain tolls for the use of the turnpike, until the expiration of twenty-five years from the date of the charter, and as much longer as the State should fail to redeem the franchises so granted, by paying the cost of the work. This was undoubtedly a contract; but it related only to the turnpike then authorized to be constructed. Any donations or franchises which the State might subsequently grant to the company would stand upon their own considerations, and could not fairly be claimed as parcel of the consideration of the original contract. In 1861, when the term of the charter had more than half expired, the State gave the company a new and additional privilege; namely, the privilege of using the bridge and dyke in question, and of erecting a toll-gate thereon. The only consideration required was, that the company should keep them in repair; but should not even be responsible for any destruction of the dyke by high floods. The consideration was continuous, and correlative to the continued use. No term was expressed for the enjoyment of this privilege; and no conditions were imposed for resuming or revoking it on the part of the State. It cannot be presumed that it was intended to be a perpetual grant; for the company itself had but a limited period of existence. At common law, a grant to a natural person, without words of inheritance, creates only an estate for the life of the grantee; for he can hold the property no longer than he himself exists. By analogy to this, a grant to a corporation aggregate, limited as to the duration of its existence, without words of perpetuity being annexed to the grant, would only create an estate for the life of the corporation. In the present case, the turnpike company was created to continue a corporate body only for the term of twenty-five years from the date of its charter; and although, by necessary implication, a further continuance, with the special faculty of holding and using the turnpike authorized by the act until redeemed by the State, is given to it for that purpose, yet it is only by implication, arising from the necessity of the case, and, therefore, cannot be extended to other purposes and objects. Grants of franchises and special privi-

leges are always to be construed most strongly against the donee, and in favor of the public. We think the Supreme Court of Illinois construed the grant liberally in this case, when it declared "the fair construction" to be, that it was designed the corporation should have the use of the bridge and dyke, with the right to take tolls thereon, until the period fixed for the determination of its existence; and we think that that period cannot be extended by implication beyond the prescribed term of twenty-five years, except for the purposes contained in the charter.

If the company had been authorized to construct the dyke and bridge, and had done so; or if it had been authorized to acquire a proprietary interest in the property in fee, and had acquired such interest, — the case would have had a different aspect. Then the question would have been, whether the State could have taken back the property without just compensation. But it does not arise in this case. The only question here is, whether, in resuming the possession of the bridge and dyke, by subjecting them to the control and management of the city of East St. Louis, it has passed a law impairing the obligation of a contract. We think it has not.

*Judgment affirmed.*