IVISON *et al. v.* BOARD OF SCHOOL COMMISSIONERS.

*(Circuit Court, D. Indiana.* September 5, 1889.)

1. SCHOOLS AND SCHOOL-DISTRICTS — TEXT-BOOKS — EVIDENCE — PAROL, TO EXPLAIN WRITING.

A proposition by complainants to the school board of a city, that if certain text-books should be adopted by the latter complainants would furnish them on certain terms, and a resolution of acceptance of such proposition by the board, neither of which stipulates for any length of time for which the books shall be used, creates a contract free from ambiguity, and evidence *aliunde* is not admissible to show that a certain time was intended.

2. SAME.

Nor is such intention shown by the requirement of Rev. St. Ind. § 4436, that no text-book adopted by the county board shall be changed within six years from its adoption. as such requirement does not apply to cities; and as the statute also provides that such changes may be made by the unanimous consent of the board.

3. SAME.

The facts that by its by-laws the board can make no changes in books except at certain sessions, and that at another session it is about to exclude complainants' books and introduce others, in accordance with an act of the legislature, does not, on bill to enjoin such action, bring in question the validity of the act, where the board's by-laws also provide that changes may be made at any time by a two-thirds vote.

In Equity. On bill for injunction.

*A. C. Harris,* for complainants.

*Duncan, Smith & Wilson,* for defendant.

WOODS, J. The bill of the complainants is to the effect that in May, 1888, the board of school commissioners of the city of Indianapolis entered into a contract with the complainants, whereby, on terms stated, Swinton's geographies were adopted for use in the schools of the city for the term of six years; that the complainants have fully complied with the contract on their part, but that the commissioners, supposing themselves bound in law to such action, are about to adopt and introduce, to the exclusion of complainants' books, books to be supplied by contractors under a certain act of the legislature of Indiana of date of March 2, 1889, (Acts 1889, p. 74;) that said act, besides being in violation of the constitution of the state for reasons stated, is invalid in respect to the contract of the complainants and the board of school commissioners, aforesaid, and in violation of the constitution of the United States, because, if upheld, it would impair the obligation of that contract.

In respect to the making and terms of that contract, the bill shows that at the regular session of the board on May 4, 1888, a resolution was passed that Swinton's geographies be adopted, provided satisfactory terms could be obtained with the publishers; and that, after conferring with the board, the complainants signed and submitted to the board, at its session held on the 18th day of May, 1888, the following proposition:

"MAY 4, 1888.

"This paper is to certify that, if Swinton's geographies be adopted by the school board of Indianapolis, Ivison, Blakeman, Taylor & Co., as publishers

of said books, will furnish them to the pupils of the public schools of Indianapolis in accordance with the following conditions: (1) Swinton's Introductory Geography to be given in even exchange for all Guyot's Elementary Geographies presented for such exchange upon an agreed date acceptable to both parties to this agreement. (2) The same of Swinton's Grammar School Geography for Guyot's Intermediate Geography. (3) A Swinton's Grammar School Geography to be given for a copy of Guyot's Elementary and thirty-five cents, if presented at date mentioned above. (4) A donation of 250 copies of each book, Swinton's Introductory, and Swinton's Grammar School, to be made to the school board. (5) The publishers to furnish teacher's desk, in every case, with a copy of the book used in her grade. (6) Introduction rates of 40 cts. for Introductory, and 90 cts. for Grammar School; to continue for one year. (7) Regular prices after one year to be regular wholesale prices, subject to any deductions that may for any reason be made in said books by the publishers. The prices are in no case to be increased during the term of use of such books in Indianapolis.

[Signed]    "IVISON, BLAKEMAN, TAYLOR & Co.
"By W. F. FRY, General Agent for Indiana & Michigan."

And that thereupon at said meeting it was moved by a member of the board that said proposition be adopted by said board and the agreement concurred in, which was then and there done, as fully appears upon the files and records of the board.

In respect to the powers of the school commissioners of the city to adopt books and make contracts for their supply, the statutory provisions are as follows:

Rev. St. 1881: "Sec. 4436. *County Board of Education.* (8) The county superintendent, and the trustees of the townships, and the chairman of the school trustees of each town and city of the county, shall constitute a county board of education. * * * Said board shall consider the general wants and needs of the schools and school property of which they have charge, and all matters relating to the purchase of school furniture, books, maps, charts, etc. The change of text-books, except in cities, and the care and management of township libraries, shall be determined by such board, and each township shall conform as nearly as practicable to its action; but no text-book hereafter adopted by the county board shall be changed within six years from the date of such adoption, except by unanimous vote of all the members of such board: provided, that any text-book heretofore adopted by the county board of education shall not be changed within three years from the date of its adoption."

"Sec. 4460. *Duties and Powers.* (4) Such board of school commissioners is hereby authorized: * * * *Seventh.* To establish and enforce regulations for the grading of, and course of instruction in, the schools of the city, and for the government and discipline of such schools."

The by-law of the board on the subject is as follows:

"Sec. 7. *Text-Books and Course of Instruction.* It shall be the duty of this committee, annually, at the first regular meeting of the board in April, to make a report embracing such facts and suggestions in regard to text-books and course of instruction as it may think advisable to present. At this meeting any member may propose changes in text-books. All propositions for changes in text-books shall lie over for one month, when they may be acted upon. It shall not be in order for any commissioner at any other time to propose changes in text-books used in the schools, except by a vote of at least two-thirds of all the members of the board. * * * All changes in text-books

shall take effect only at the commencement of the fall term of the schools, unless it be otherwise ordered by a vote of two-thirds of all the members of the board."

At the threshold, manifestly, is the inquiry whether the complainants have the contract right which they assert. If not, they have no cause of complaint against the respondent, and no right, in this court certainly, to bring into question the validity or scope of the act of the legislature of the state, under which, it is alleged, the respondent is about to take action in hostility to complainants' interest.

By the seventh clause of section 4460, *supra*, the board of school commissioners are empowered "to establish and enforce regulations for the grading of and course of instructions in the schools of the city." In this clause, helped out possibly by implication from section 4436, *supra*, must be found whatever authority there is for making such a contract as the one in question; and, considering the principle that grants of power to municipal corporations are to be construed strictly, it is not clear that the board had power to bind itself by a stipulation that the books adopted should continue in use for a stated period of years. This power to select or adopt books was given, mainly, at least, for the benefit of the public, to be used as occasion should require; and it is not consistent with this design that, in a single exercise of it, the board should abrogate or exhaust it by stipulating that it should not for a term stated be exercised again. If this could be done for six years, it could for sixty. See *Conley* v. *School Directors*, 32 Pa. St. 194; *Clark* v. *School Directors*, 78 Ill. 474; *Bancroft* v. *Thayer*, 5 Sawy. 502. But, whatever the power of the board in this respect may have been, the proposition submitted by the complainant and the resolution of acceptance by the board, constituting whatever contract there is between them, do not show an agreement that complainants' books shall be used for the term of six years, or for any definite time. Indeed, I am not clear that by this transaction the board can be deemed to have come under any obligation to the complainants whatever. It seems rather to have simply exercised its authority to adopt, and, as a condition of its action, to have exacted of the complainants a promise to furnish the books at the prices stated, "during the term of use of such books in Indianapolis;" that is to say, "so long as the books should be used in Indianapolis." That the understanding at the time was that the board was doing and binding itself to do nothing beyond the adoption of the books, is indicated in the first sentence of complainants' proposition: "This paper is to certify that if Swinton's geographies be adopted by the school board of Indianapolis, Ivison, Blakemore, Taylor & Co., as publishers of said books, will furnish them," etc.; and in the entire document, and in the resolutions adopted by the board, there is no suggestion of a condition, covenant, or promise that there should be, after the adoption, any further action or liability on the part of the board. Practically, the action taken was simply a grant by the board to the complainants of the exclusive privilege or right to furnish to the pupils and patrons of the city schools the books specified, upon the terms stated, until other books instead should be adopted,—

that is to say, during the pleasure of the board; and in this view the doctrine is perhaps applicable that "grants of franchises and special privileges are always to be construed most strongly against the donee and in favor of the public." *Turnpike Co.* v. *Illinois*, 96 U. S. 63; *Slidell* v. *Grandjean*, 111 U. S. 412, 4 Sup. Ct. Rep. 475; *Navigation Co.* v. *Railway Co.*, 130 U. S. 1, 9 Sup. Ct. Rep. 409.

But aside from this doctrine, and conceding that the complainants have a contract which should be interpreted by the ordinary rules, there is in it no such ambiguity or incompleteness as to admit of extraneous evidence to explain its meaning, or to enlarge its scope. The affidavits, therefore, introduced on the proposition of complainants that the parties intended a contract for six years, must be rejected, and the intention must be deduced from the written proposition of complainants, and the resolution of acceptance by the board; and from these, as already stated, it does not appear that any term of use was stipulated.

The requirement in section 4436, that no text-book adopted by the county board shall be changed within six years from the date of adoption, in no manner helps out the claim of the complainants for a contract or privilege for six years, because that provision has no application to cities; and even if applicable, it could lend no force to the contract, because, by the unanimous consent of the county board, changes could be made at any time. It is suggested, however, that by its by-laws the board can make no change of text-books except at its April session, and consequently there can be no action upon the subject now, except it be under the act of the legislature referred to, and therefore the validity of that act is in issue, even if plaintiffs' contract be for no definite term of use. The sufficient answer to this is that, by the terms of the by-law, changes may be made at any time by a two-thirds vote of the members of the board. It follows that the application for a temporary restraining order must be denied; and it is so ordered.