OMAHA ELECTRIC LIGHT & POWER CO. v. CITY OF OMAHA et al.†

(Circuit Court of Appeals, Eighth Circuit. April 20, 1910.)

No. 3,141.

1. MUNICIPAL CORPORATIONS (§ 78*)—LEGISLATIVE GRANT OF POWER—CONSTRUCTION.

Legislative grants of power to municipal corporations must be strictly construed, and cannot operate as a surrender of legislative power, except so far as expressly delegated or indispensably necessary to the exercise of some other power which has been expressly delegated.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 182; Dec. Dig. § 78.*]

2. MUNICIPAL CORPORATIONS (§§ 680, 681*)—POWERS—GRANT OF PERPETUAL FRANCHISE TO LIGHT COMPANY.

A legislative grant of power to a city generally to "provide for lighting the streets" and to "care for and control the streets" is not specific enough to warrant a grant by the city to a business corporation of the right to use the streets of the city forever for the purpose of conducting a general lighting business; that being a servitude not embraced within the ordinary control over streets usually given to municipalities.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1463; Dec. Dig. §§ 680, 681.*]

3. ELECTRICITY (§ 4*)—GRANT TO COMPANY OF RIGHT TO USE STREETS—CONSTRUCTION—DURATION OF FRANCHISE.

A city by ordinance granted to an electric light company a franchise to erect and maintain poles and wires "for the purpose of transacting a general electric light business through, upon, and over the streets, alleys, and public grounds of the city * * * under such reasonable regulations as may be provided by ordinance; * * * provided, further, that whenever the city council shall by ordinance declare the necessity of removing from the public streets and alleys the * * * electric poles or wires thereon constructed or existing said company shall within sixty days" remove the same. The company was not at the time incorporated, but was immediately afterward incorporated, in accordance with the understanding of the parties, for a term of 20 years. Held, that it could not be presumed that it was intended to grant to such company a perpetual franchise, but, no term being expressed, it would be construed as a grant at

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied October 13, 1910.

least for the life of the corporation, and that its assigns or successors might thereafter hold and enjoy the same at the will of the city only.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 1; Dec. Dig. § 4;* Municipal Corporations, Cent. Dig. § 1482.]

Appeal from the Circuit Court of the United States for the District of Nebraska.

Suit in equity by the Omaha Electric Light & Power Company against the City of Omaha and others. Decree for defendants (172 Fed. 494), and complainant appeals. Affirmed.

Westel W. Morsman, for appellant.

Harry E. Burnam and I. J. Dunn, for appellees.

Before SANBORN and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. The electric light company had been carrying on the business which its name indicates in the city of Omaha for some 25 years, when in May, 1908, by a concurrent resolution of the city council, the electrician of the city was directed to disconnect the wires of the company so as to prevent their use for the transmission of electric current for heat or power. To enjoin that threatened action was the purpose of this suit, which was instituted by the company against the city and its electrician, Michaelson. The Circuit Court refused to issue the injunctive order, and on final hearing dismissed the bill. The company appeals.

On December 16, 1884, the city passed an ordinance known as No. 826, as follows:

"Be it ordained by the City Council of the City of Omaha:

"Section 1. That the New Omaha-Thomson-Houston Electric Light Company, or assigns, is hereby granted the right of way for erection and maintenance of poles and wires, with all the appurtenances thereto, for the purpose of transacting a general electric light business through, upon and over the streets, alleys and public grounds of the city of Omaha, Nebraska, under such reasonable regulations as may be provided by ordinance. * * * Provided further, that whenever the city council shall, by ordinance, declare the necessity of removing from the public streets and alleys of the city of Omaha the telegraph, telephone or electric poles or wires thereon constructed or existing, said company shall, within sixty (60) days from the passage of such ordinance remove all poles and wires from such streets and alleys by it constructed, used or operated."

At the time this ordinance was passed, the electric light company referred to therein had not been incorporated.

It was, however, understood that it should be and it subsequently was incorporated pursuant to that understanding for a term of 20 years to expire September 26, 1905. The company, being then an incorporated body of limited life tenure, accepted the ordinance as passed, and thereby entered into contract relations with the city. These facts estop both parties from denying that there was a corporation in existence at the time the contract was formally concluded, or that such corporation was one of limited life tenure. The company afterwards proceeded to construct a plant and machinery for generating electric current with a system of poles and wires in the streets and alleys for its transmission and distribution throughout the city and maintained the same contin-

uously until July 29, 1903, when, its corporate life being about to expire by limitation, it sold and transferred its property and franchises to the complainant Omaha Electric Light & Power Company. The latter named company continued the business of its predecessor without interruption until May, 1908, when the following concurrent resolution was adopted:

"Resolved, by the city council of the city of Omaha, the mayor concurring, that the city electrician be, and he is hereby ordered and directed to disconnect, or cause to be disconnected, on or before July 1st, 1908, all wires leading from the conduits or poles of the Omaha Electric Light & Power Company transmitting electricity to private persons or premises to be used for heat or power; and to take such steps as may be necessary to prevent the said Omaha Electric Light & Power Company from furnishing or transmitting from the conduits or wires, electricity to private persons or premises for heat or power purposes. * * * "

The city was about to carry this resolution into effect when the bill in the case was filed. On the hearing of an application for a temporary restraining order the cause was by agreement submitted on the merits for a final decree.

The complainant claimed that because its grant from the city was absolute in form, containing no limitation upon its duration, it constituted a grant in perpetuity entitling it and its successors or assigns to use the streets forever for the distribution of its electric current. The city claimed (1) that it was without power to grant a perpetual franchise, and (2) that, if it had the power, it did not exercise it, but, at best, conferred upon the company a license to occupy its streets revocable at the will of the city at least after the expiration of the corporate life of the company.

The joint resolution of May, 1908, disclosed the intention on the part of the city to prevent the company from using its streets for transmitting electricity for heat or power purposes only. The claim was that the ordinance in terms granted the right of way for the purpose of transacting "a general electric light business" only, and that furnishing either heat or power was not comprehended within the terms of the grant. The court below adopted the theory that the ordinance in granting the right to transact "a general electric light business" necessarily limited the right of the company thereunder to use the streets to carry on a lighting business only, and did not confer upon it the right to use them for any other branch of business. It was argued in opposition, among other things, that the words "general electric light business" are of such uncertain and ambiguous import as to permit elucidation by the practical construction placed upon them by the parties, and that, as so constructed, they comprehended the business of transmitting electric current for heat and power as well as light.

Many facts called to our attention by learned counsel for complainant indicate that the city allowed the company to invest large sums of money in preparing for this extended service, knew it was about to enter upon it, and that it was continuing in it, and not only did not object, but received pecuniary emoluments therefor. Such being the case, the argument at the bar was extended beyond the limited inquiry made by the trial court. It was addressed to the fundamental questions, wheth-

er the city had the power. to grant a perpetual franchise, and if so whether it had in fact done so. As these questions necessarily include the less important one actually decided below, we will confine ourselves to them.

Undoubtedly the ordinance granted to the company either (1) a franchise to use the streets of the city perpetually; (2) a franchise to use them for a reasonable time, the same to be determined in view of all the facts and circumstances; or (3) a license revocable at the will of the city at any time. Which of these is correct? The city contends it cannot be construed as a perpetual franchise because that would violate the prohibition of article 1, § 16, of the Constitution of Nebraska, which ordains that "no * * * law * * * making any irrevocable grant of special privileges or immunities * * * shall be passed." The company contends that the grant of a perpetual franchise which confers no exclusive right to the grantee is not the grant of a special privilege or immunity within the meaning of the Constitution and relies upon Plattsmouth v. Nebraska Telephone Co., 80 Neb. 460, 464, 114 N. W. 588, 14 L. R. A. (N. S.) 654, 127 Am. St. Rep. 779, Omaha Water Co. v. City of Omaha, 77 C. C. A. 267, 272, 147 Fed. 1, 12 L. R. A. (N. S.) 736, and cases there cited. This contention of the company might be conceded, and the question would not be settled. The Legislature of the state which primarily had the authority to grant the use of streets for other than the ordinary purposes of travel could have exercised its authority by direct legislation or through the instrumentality of the city in which the streets were situated.

In Wright v. Nagle, 101 U. S. 791, 25 L. Ed. 921, the question related to the grant of a franchise to maintain a toll bridge. The Supreme Court there said:

"A grant of this franchise from the public in some form is therefore necessary to enable an individual to establish and maintain a toll bridge for public travel. The Legislature of the state alone has authority to make such a grant. It may exercise this authority by direct legislation, or through agencies duly established, having power for that purpose. The grant when made binds the public, and is, directly or indirectly, the act of the state. The easement is a legislative grant, whether made directly by the Legislature itself, or by any one of its properly constituted instrumentalities."

See to the same effect City Railway Co. v. Citizens' Railroad Co., 166 U. S. 557, 563, 17 Sup. Ct. 653, 41 L. Ed. 1114.

The mayor and council, therefore, in making the contract evidenced by Ordinance 826, were exercising a delegated authority. The state by act of its Legislature approved February 21, 1883 (Laws 1883, p. 90, c. 10), empowered the mayor and council of each city to pass any and all ordinances not repugnant to the Constitution and laws of the state; "* * * to provide for the lighting of the streets, * * * to care for and control * * * streets, avenues, parks and squares within the city," and by act of its Legislature approved March 3, 1885, before acceptance by the company of the grant in question (Laws 1885, c. 13, p. 117), it again empowered them "to provide for the lighting of streets; laying down of gas pipes and erection of lamp posts, and to regulate the sale and use of gas and electric lights, the charge for electric light and the rent of gas meters within the city,

and to require the removal from the streets, avenues and alleys, and the placing on the ground of all telegraph, electric and telephone wires." Legislative grants of power to municipal corporations must be strictly construed, and cannot operate as a surrender of legislative power except so far as expressly delegated or is indispensably necessary to the exercise of some other power which has been expressly delegated. Boise City Artesian Hot & Cold Water Co. v. Boise City, 59 C. C. A. 236, 123 Fed. 232; City of Detroit v. Detroit City Ry. Co. (C. C.) 56 Fed. 867, 876; Turnpike Co. v. Illinois, 96 U. S. 63, 24 L. Ed. 651; Long Island Water Supply Co. v. Brooklyn, 166 U. S. 685, 696, 17 Sup. Ct. 718, 41 L. Ed. 1165; Citizens' St. Railway v. Detroit Railway, 171 U. S. 48, 18 Sup. Ct. 732, 43 L. Ed. 67; Water, Light & Gas Co. v. City of Hutchinson, 207 U. S. 385, 28 Sup. Ct. 135, 52 L. Ed. 257; Lancaster County v. Green, 54 Neb. 98, 74 N. W. 430.

Applying this rule to the present case, we are of opinion that the conference of power in general terms to "provide for lighting the streets" or "to care for and control the streets" is not specific enough to warrant a grant by the city to a business corporation of the right to use the streets of the city forever for the purpose of conducting a general lighting business. That is a servitude not embraced within the ordinary control over streets usually given to municipalities. A perpetual franchise, even if not exclusive in fact, becomes largely so by the advantage in the race which preoccupancy of the field and perpetual right to continue in it afford. And, while it may not be technically obnoxious to the constitutional prohibition against "granting special privileges or immunities," it is so unusual and extraordinary as to require, in our opinion, a more specific legislative authorization than the general language relied on by the company therefor. We therefore conclude that, even if the mayor and council had intended to grant a perpetual franchise to the company, they were powerless to do so.

This conclusion might put an end to further discussion, but another proposition was argued before us which brings us to the same result. The ordinance when taken as a whole and construed in the light of what was expressed as well as unexpressed in it, and, in view of all the attending facts and circumstances, discloses, we think, a clear purpose not to grant a perpetual franchise. The right to use the streets of the city forever to inaugurate and promote a private enterprise would seem to have been so important and valuable a feature of the contract as to irresistibly lead the contracting parties to mention it specifically if they intended to provide for it and not leave its existence dependent upon implication.

The ordinance actually reserved to the city the right to require the removal of the poles and wires from the streets within 60 days after the city council should declare the necessity therefor by ordinance. This is not only inconsistent with, but it seems quite repugnant to, the claim of perpetuity now made by the company. On the other hand, the cost and expense of installing and maintaining an electric lighting system was so great as to render it unlikely that the company would embark upon it without assurance of some reasonable term of enjoyment. Moreover, the fact that the company was permitted without let or hindrance to continue its business for the full period of 20 years

indicates a mutual understanding that some substantial term of enjoyment was contemplated. That was a practical construction placed upon a contract of dubious meaning which, according to well-recognized law, should receive due consideration at the hands of the court. In view of the foregoing, disclosing that no perpetual franchise was intended and pointing to the improbability of the company embarking upon the business without some assurance of extended enjoyment, we think the fact that the corporate life of the company continued for a period of 20 years affords a key to the true intention of the parties. It is improbable that the mayor and city council with due regard to the rights of the inhabitants of the city would tie their own hands as well as that of all future councils and mayors by granting a perpetual franchise to a company whose corporate life rendered it certain that it could not discharge its duties more than 20 years, and with no obligation upon it at the end of its life to assign its rights to another person or corporation empowered or obligated to accept the grant and perform the desired service.

In Turnpike Co. v. Illinois, supra, the Supreme Court of the United States, in considering whether the grant of a given franchise was in perpetuity or not, made use of the following language:

"No term was expressed for the enjoyment of this privilege, and no conditions were imposed for resuming or revoking it on the part of the state. It cannot be presumed that it was intended to be a perpetual grant, for the company itself had but a limited period of existence. At common law, a grant to a natural person, without words of inheritance, creates only an estate for the life of the grantee; for he can hold the property no longer than he himself exists. But, by analogy to this, a grant to a corporation aggregate, limited as to the duration of its existence, without words of perpetuity being annexed to the grant, would only create an estate for the life of the corporation. * * * Grants of franchises and special privileges are always to be construed most strongly against the donee, and in favor of the public."

In Wyandotte Electric Light Co. v. City of Wyandotte, 124 Mich. 43, 82 N. W. 821, the Supreme Court of Michigan considered an application to restrain interference with poles and wires of an electric light company, and said:

"If a railroad company were organized for a period of 30 years, and a party, natural or corporate, should grant it a right of way without specifying the time of user, the grant would be for the lifetime of the corporation. The law would imply that both parties contracted with reference to its period of existence. The same rule is applicable here"—citing Turnpike Co. v. Illinois, supra.

To the same effect are Blair v. Chicago, 201 U. S. 400, 481, 26 Sup. Ct. 427, 50 L. Ed. 801; City of Rock Island v. Central U. Tel. Co., 132 Ill. App. 248; Virginia Cañon Toll Road Co. v. People, 22 Colo. 429, 45 Pac. 398, 37 L. R. A. 711.

We think the facts of this case in the light of the foregoing authorities disclose the intention that the company should have and enjoy the franchise in question at least for the period of its corporate existence, and that its assigns or successors might thereafter hold and enjoy the same at the will of the city only.

This conclusion reconciles many if not all of the apparent inconsistencies of the situation, and is not in disharmony with the principle

declared in Detroit v. Detroit Citizens' St. Ry. Co., 184 U. S. 368, 395, 22 Sup. Ct. 410, 46 L. Ed. 592, and State ex rel. City of St. Louis v. Laclede Gaslight Co., 102 Mo. 472, 14 S. W. 974, 15 S. W. 383, 22 Am. St. Rep. 789, that a corporation whose corporate existence was limited to a term of years could accept a grant or make a contract extending beyond the limit of its corporate life. The question here is not whether a lawful contract could be made for a term extending beyond the corporate life of the company, but relates to the probative force which limited life tenure among other facts and circumstances has in construing a contract of uncertain and ambiguous character like that under consideration.

It follows that the electric light and power company at the time of the threatened removal of its equipment by the city was occupying the streets as a licensee at the will of the city. Without passing on the question whether the grant of a franchise to use streets for "an electric light business" is sufficiently comprehensive to include the right to use them for the purpose of transmitting electric current for heat and power purposes, we think the decree dismissing the bill was correct on the ground that the franchise to use the streets for any purpose had expired before this suit was brought.

The decree below is accordingly affirmed.