MINNEAPOLIS GENERAL ELECTRIC CO. v. CITY OF MINNEAPOLIS.

(Circuit Court, D. Minnesota, Fourth Division. December 22, 1911.)

1. ELECTRICITY (§ 11*)—REGULATING RATES OF ELECTRIC COMPANY.

Under the rule that legislative grants of power to municipal corporations must be strictly construed and limited to such powers as are expressly delegated, or are indispensably necessary to the exercise of some other power expressly delegated, the city of Minneapolis has no power to regulate rates to be charged by an electric company, and an ordinance which attempts, directly or indirectly, to fix such rates, is ultra vires and void.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 11.*]

2. ELECTRICITY (§ 11*)—CONSTITUTIONAL LAW (§ 298*)—ORDINANCE REGULATING BUSINESS OF ELECTRIC COMPANY—VALIDITY.

A city ordinance requiring an electric company to install service and furnish electricity on demand from "any citizen" without reference to

the distance of such installation from the constructed lines of the company, upon the deposit by the applicant of the estimated cost of one month's service, and in certain cases without any deposit, on the giving of a bond, and not to discontinue such service except on request, or by consent of the city council, regardless of whether the rates were paid when due, is void as unreasonable and as taking the company's property without due process of law for the private use of another.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 11;* Constitutional Law, Cent. Dig. § 847; Dec. Dig. § 298.*]

3. EMINENT DOMAIN (§ 61*)—POWERS—TAKING PROPERTY FOR PRIVATE USE.
A municipal corporation has no power, nor can power be conferred on it by statute, to enact an ordinance, the effect of which will be to take the property of a public service corporation for a private use.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 61.*]

4. INJUNCTION (§ 85*)—JURISDICTION—SUIT TO ENJOIN ENFORCEMENT OF VOID ORDINANCE.
A court of equity has jurisdiction to enjoin the enforcement of a city ordinance regulating the business of a public service corporation, the effect of which, if obeyed, would be to take the property of the corporation for the private use of others without compensation, while disobedience would subject the corporation to penalties prescribed for each violation.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 155, 156; Dec. Dig. § 85.*]

5. INJUNCTION (§ 137*)—PRELIMINARY INJUNCTION—ISSUES ARISING ON MOTION.
It is no objection to the granting of a preliminary injunction that it involves the decision of an issue of law which virtually determines the case.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 307–309; Dec. Dig. § 137.*]

6. INJUNCTION (§ 85*)—SUBJECT OF INJUNCTION—PUBLICATION OF VOID ORDINANCE.
Under a city charter providing that ordinances shall take effect and be in force from and after their publication, such publication after an ordinance has been passed and signed is a ministerial, and not a legislative, act, and may be enjoined by a court of equity which has adjudged the ordinance void.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 85.*]

In Equity. Suit by the Minneapolis General Electric Company against the City of Minneapolis. On motion for preliminary injunction. Granted.

The Walker ordinance, referred to in the opinion, fixed the maximum rate to be charged by public service corporations for the distribution of electricity in the city of Minneapolis, but prescribed no penalty. The Heywood ordinance referred to in the opinion is as follows:

"An ordinance requiring public service corporations using the city streets or alleys for distribution of electricity for light, heat and power to install its service upon proper demand.

"The city council of the city of Minneapolis do ordain as follows:

"Section 1. That every public service corporation now or hereafter using the streets or alleys of the city of Minneapolis, for the distribution of electricity for light, heat and power, shall install its service upon demand from any citizen, subject to the ordinances regulating such installation, provided

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that such corporation may, if it deems itself insecure, require the deposit of an amount of money equal, at the rates established by the city council, to the probable monthly value of the services so demanded. Such service when so installed shall not be discontinued by such public service corporation except by consent of the city council or by request of the consumer.

"Sec. 2. In case any such public service corporation shall have discontinued its services within ninety days prior to the adoption of this ordinance, without the consent of the consumer, it is hereby required to restore said service, upon demand of the said consumer, provided the said consumer, if requested by said corporation, shall deposit with the city clerk a good and sufficient bond indemnifying it against any loss on account of electricity furnished or services rendered or to be furnished or rendered, at the legal rates established by said city council by ordinance adopted June 28th, 1907.

"Sec. 3. Any such public service corporation, or any officer or agent thereof, who shall fail or neglect to comply with the requirements of this ordinance, shall be punished, on conviction thereof, by a fine not exceeding $100 for each offense, or by imprisonment not exceeding 90 days.

"Sec. 4. This ordinance shall take effect and be in force from and after its publication."

Koon, Whelan & Hempstead and Brooks & Jamison, for complainant.

Daniel Fish, for defendant.

WILLARD, District Judge (orally). If the case made by this bill related only to the ordinance of June 28, 1907, which is called the Walker ordinance, I should deny the motion for a temporary injunction. But the bill is not so limited. It embraces, also, the ordinance of September 29, 1911, which is called the Heywood ordinance. Upon this motion for a temporary injunction the decision itself will be limited to the latter ordinance. That ordinance is said to be void for two reasons. One is because it puts in force or attempts to put in force the rates prescribed by the Walker ordinance, which ordinance it is claimed by complainant is void; and the other is because, even assuming that the Walker ordinance is valid, nevertheless the Heywood ordinance deprives complainant of its property without due process of law. So far as the validity of the Walker ordinance is concerned, as bearing upon the Heywood ordinance, the only question which the case presents is whether the council had any authority to pass such an ordinance. The question as to whether the rates fixed by that ordinance are reasonable or unreasonable will never in my judgment be an issue in this case, either now or upon the final hearing. If the city council had no power to to pass an ordinance regulating the rates, that would end the case, and it would be of no consequence whether the rates fixed by the ordinance were reasonable or unreasonable. If, on the contrary, the city council had power to pass the ordinance, then no case is presented by this bill for an adjudication upon the question as to whether the rates are reasonable or unreasonable. There is no allegation in the bill that these rates are confiscatory, and no allegation in the bill that the ordinance of June 28, 1907, deprives the complainant of its property without due process of law.

We come, then, so far as the Walker ordinance is concerned, and so far as the allegations in the bill are concerned, to the bald case of

a suit in which it is asked that the court determine that certain rates fixed by a council which has power to regulate rates are reasonable when it is not claimed that they are confiscatory. It is settled beyond controversy that a court has no power to fix rates for the future. If the rate-making power has authority to determine rates, then those rates must stand, so far as the court is concerned, unless they are confiscatory, unless they deprive the complainant of its property without due process of law, and there is no claim that they do in this case. So I do not see how the question of the reasonableness of these rates will ever be an issue here.

But the question is whether the Heywood ordinance is void because it attempts to put in force the Walker ordinance which it is claimed is also void. It is insisted by complainant that that is an issue in the case, and I see no escape from a decision upon this question by the court, although there may be other grounds upon which the validity or the invalidity of the Heywood ordinance may be determined. That is one ground. As has been said, the two ordinances in this respect, are so interwoven that it is impossible to hold the Heywood ordinance valid, as far as rates are concerned, if the Walker ordinance is invalid. While I have no intention of making any decree declaring the Walker ordinance void, yet I do consider it my duty in this case to express an opinion upon the validity or invalidity of that ordinance, because it affects the validity or invalidity of the Heywood ordinance.

[1] The only question necessary to consider is whether the Legislature has ever conferred upon the city power to regulate the rates of this company. Upon questions of this kind I call attention to the case of Omaha Electric Light & Power Company v. City of Omaha, 179 Fed. 455, 459, 102 C. C. A. 601, 605, decided by the Court of Appeals of this circuit. It was said:

"Legislative grants of power to municipal corporations must be strictly construed, and cannot operate as a surrender of legislative power except so far as expressly delegated or as indispensably necessary to the exercise of some other power which has been expressly delegated."

In support of that proposition, a large number of cases are cited. That doctrine, of course, is controlling upon this court.

No section of the charter has been cited by defendant which expressly delegates this power. No section of the charter is cited by defendant which shows that this power to regulate the rates of this company is indispensably necessary to the exercise of any other power granted by the Legislature to the city. In fact, the only section and the only law to which my attention has been called by the defendant is section 2842 of the Revised Laws of Minnesota. It is sufficient to say that that section does not come anywhere near the requirements of this statement by the Circuit Court of Appeals in the Omaha Case. In my opinion the city council had no authority and has no authority now to determine the rates to be charged by this company. It having no power to determine the rates to be charged by the company, it follows that the ordinance of 1911, which compels the company to furnish service at the rates fixed by the ordinance of 1907, cannot be enforced.

[2] But, even if the 1907 ordinance were valid, there are grounds which in my opinion make the ordinance of 1911 void. The ordinance provides in the first place:

"That every public service corporation now or hereafter using the streets or alleys of the city of Minneapolis, for the distribution of electricity for light, heat and power, shall install its service upon demand from any citizen, subject to the ordinances regulating such installation," etc.

There is nothing in that section of the ordinance, or in any other part of the ordinance, which limits the operation of the first section to those parts of the city to which the conduits or lines of the company are now extended. It appears that there are large districts in the city where these conduits do not reach, and that they are sparsely populated districts. If that section is to be given its plain meaning, it indicates that any person in the extreme borders of the city can make a demand upon the company for installation of its service, although he may be miles from any conduit or line. It would then be its duty to obtain an order from the city council to extend its lines to that section, and the company would be compelled to comply with this demand under the penalty provided by the ordinance. The Supreme Court in the case of Northwestern Telephone Exchange Co. v. City of Minneapolis, 81 Minn. 140, 83 N. W. 527, 86 N. W. 69, 53 L. R. A. 175, indicates that such a request is unreasonable, and that an ordinance containing such a provision is void. This ordinance further provides that installation shall be made upon "the deposit of an amount of money equal, at the rates established by the city council, to the probable monthly value of the services so demanded." It seems to be agreed by both sides that that requires a deposit of the value of only one month's service. The ordinance then continues:

"Such service when so installed shall not be discontinued by such public service corporation except by consent of the city council or by request of the consumer."

That ordinance can mean nothing more than that by the deposit of the value of one month's service the company is bound to install its service, and it is bound to continue that service indefinitely until the consumer asks to have it stopped, or until the city council issues orders to stop it. I see no warrant in the ordinance for the construction suggested by defendant that this requires a deposit each month of the value of that month's service. There is nothing said about a deposit every month, but the ordinance distinctly provides that the service shall be installed on one deposit only, and, when once installed, it shall not be discontinued without the consent of the city or request of the consumer. The result would be by the terms of this ordinance that the company would be bound to furnish light, heat, and power to irresponsible persons for an indefinite time, unless it could get the consent of the council to do otherwise. It seems to me that the ordinance deprives the company of its property without due process of law. It is taking the property of the company not for public use, but for private use. It is taking its property and giving it to a private person without any compensation, and it leaves the company to its

remedy by action to recover the price. What would be said of an ordinance of the city which required the street car company to furnish a book of 100 tickets at 5 cents per ticket upon deposit of the price, and then require the company to carry that person indefinitely upon the deposit of the value of one book, until it was relieved from that obligation by the request of the passenger or by the consent of the city council? The state itself would have no power to provide that railroad companies should transport freight upon a deposit of the amount of the probable value of a month's service, and should continue such transportation indefinitely for that person until the railroad company secured the consent of the state Legislature or of the shipper to stop it. I see no difference between the two cases. It is to my mind nothing less than taking the property of the company and giving it to a private person. The ordinance is void for that reason.

Section 2 relates to persons as to whom the service has been discontinued within 90 days prior to the adoption of the ordinance. As I look at the ordinance, I see no particular reason why a person coming under that section could not have come in on section 1, also. Section 1 applies to every person who desires installation made, and the fact that installation has been once made and taken out is no reason that I can see why he could not demand another installation under section 1. He could thus relieve himself from the necessity of giving a bond for past service.

Passing that point, it is provided that service must be resumed, "provided the said consumer, if requested by said corporation, shall deposit with the city clerk a good and sufficient bond indemnifying it against any loss on account of electricity furnished or services rendered." This does not require him to pay anything at all, even the rate prescribed by the Walker ordinance. He is simply required to give a bond that he will pay. It not only allows him to give a bond for what he already owes, but it does not require him to make a deposit for future service as does section 1. It allows him to furnish a bond for such future service. There is nothing in the section which gives any indication whatever as to what the amount of the bond shall be, whether it shall be for the value of a month's service, or the value of a year's service, or the value of a day's service. There is nothing to indicate by whom the bond is to be approved. There is nothing to indicate whether there are to be any sureties, although the word "bond" might possibly indicate that there must be sureties. But, in any event, it is open to precisely the same objection that has been stated with reference to the first section. It is even worse than that, because the first section does require a deposit of the actual cash value for at least one month's service. Section 2 does not require the deposit of anything, and that section in my judgment is void, because it deprives the company of its property without any process of law whatever. It takes the property of the company and gives it to the private consumer.

The result is that the ordinance is void—void because it deprives the company of its property without due process of law, and void,

also, because it attempts to put in force rates which the city had no right to establish.

[3] Upon the question of the effect of section 2842 of the Revised Laws of Minnesota, I had occasion to consider a similar question in the case of Edison Electric Light & Power Company v. Blomquist (C. C.) 185 Fed. 615. It was there said:

"This defendant also relies upon ordinance No. 1,675, approved April 22, 1893, and particularly on section 16 thereof, which provides, in part, as follows: 'The grantees herein, their successors and assigns, shall at all times be subject to and comply with all the ordinances of the city of St. Paul now in force, or that may be hereafter passed, governing the use of and occupancy of street of said city, subject only to the limitations herein provided, and shall comply with all police regulations, now in force or hereinafter enacted.'"

This was inserted in the franchise of the complainant, which it accepted.

"Ordinance 2,424, approved January 21, 1904, which relates particularly to the Gaslight Company, declares, in section 21, that its franchise shall be held and exercised subject to all the conditions and limitations in said charter prescribed. Section 23 of chapter 4 of the charter provides that the common council may by ordinance provide for regulating and controlling the exercise by any person or corporation of any public right, franchise, and privilege in any of the streets and any public places in said city, whether such right, franchise, or privilege has been or may be granted by said city, or by or under the laws of the state of Minnesota or any other authority. * * *

"As to all of these provisions, it is sufficient to say that no one of them does or can authorize the council to pass any ordinance taking the property of the complainants for a private purpose. The claim of defendants' counsel is that the ordinances constituted a contract between the complainants and the city to such an extent that under them the city would have the right to require complainants to furnish lights and power to a private person for nothing. I cannot consent to this proposition."

Now it may be said that the light or power furnished may amount in any particular case to a very small sum, so insignificant as not to justify a court in interfering. A similar question was raised in the Blomquist Case, and I there say:

"But whether the damage in a case of this kind is small or great does not seem to be the determining factor. If the company can be compelled to move its wires at expense to itself, it can be compelled to move its poles. If the moving of a house through the streets is a public use of the streets, then the companies can be made to submit to any extent, however great. The lowering of the tunnel in Chicago must have been done at very great expense. The relaying of the pipes in New Orleans must have been very burdensome. On the other hand, the expense of building the side track in the Nebraska case was comparatively trifling, $450. In no one of these cases was the amount of the expense considered at all important. It was held that a state could not deprive a corporation of its property for a private purpose without compensation. If the state cannot compel companies to expend $100,000 for these purposes, it cannot compel them to expend $10. The late Senator Davis of Minnesota, in arguing a question somewhat similar, said: 'It is no answer that the infraction is slight, or that it might be worse, or that it may be mitigated, or that it is a case for damages, or that a similar injury has before been tolerated.'"

[4] The ordinance of September 29, 1911, being void, the question is what shall be done with this motion. It is suggested by defendant

that there is no equity in this application, that the rates fixed are not shown to be unreasonable, and that no injustice would be done to the complainant by being compelled to observe the ordinance. As I said before, the question of reasonableness of rates is not an issue in this case. It is also said that the complainant has no interest in a determination of this question, because it has not shown that it has suffered anything by reason of unreasonable rates. Whatever application that may have to the Walker ordinance, it has no application to the Heywood ordinance. That is an ordinance which as I said at first is void because it takes away the property of the corporation, and gives it to private persons without compensation. It enforces its obligation by a penalty. The law is well settled that in a case of this kind a suit of an equitable nature is presented, and that a court of equity, as distinguished from a court of law, has jurisdiction over it.

In addition to the cases cited by counsel, I will call attention to the case Ex parte Young, 209 U. S. 123, on page 163, 28 Sup. Ct. 441, on page 455 (52 L. Ed. 714). The court there said:

"It is further objected that there is a plain and adequate remedy at law open to the complainants and that a court of equity, therefore, has no jurisdiction in such case. It has been suggested that the proper way to test the constitutionality of the act is to disobey it at least once, after which the company might obey the act pending subsequent proceedings to test its validity. But, in the event of a single violation, the prosecutor might not avail himself of the opportunity to make the test, as obedience to the law was thereafter continued, and he might think it unnecessary to start an inquiry. If, however, he should do so while the company was thereafter obeying the law, several years might elapse before there was a final determination of the question, and, if it should be determined that the law was invalid, the property of the company would have been taken during that time without due process of law, and there would be no possibility of its recovery. * * *

"Another obstacle to making the test on the part of the company might be to find an agent or employé who would disobey the law, with a possible fine and imprisonment staring him in the face if the act should be held valid. Take the passenger rate act, for instance: A sale of a single ticket above the price mentioned in that act might subject the ticket agent to a charge of felony, and upon conviction to a fine of $5,000 and imprisonment for five years. It is true the company might pay a fine, but the imprisonment the agent would have to suffer personally. It would not be wonderful if, under the circumstances, there would not be a crowd of agents offering to disobey the law. The wonder would be that a single agent should be found ready to take the risk."

The court, after discussing the matter further, continued:

"To await proceedings against the company in a state court grounded upon a disobedience of the act, and then, if necessary, obtain a review in this court by writ of error to the highest state court, would place the company in peril of large loss and its agents in great risk of fines and imprisonment if it should be finally determined that the act was valid. This risk the company ought not to be required to take."

Under the provisions of this ordinance, any number of persons might apply to the company for installations, 100, 150, 200, and, if the company refused in each case, there would be as many violations of the law as there were refusals. For such refusals the penalties prescribed by the ordinance might be inflicted. I think that case comes clearly within the decision to which attention has been called, and that it is a case of equitable cognizance.

[5] It is further suggested that, upon an application for a temporary injunction, the court should not decide an issue which virtually determines the case, and authorities have been cited to the effect that, where there is a question of law involved, the court should not undertake to determine the question upon an application for a temporary injunction. But such practice has never prevailed in this court. My distinguished predecessor granted an injunction in a case where there was much more reason for doubt than there is here, in a case where the reasonableness of the rates was in question. As I have already stated, I have repeatedly decided cases upon a motion for a temporary injunction. I say decided, for, after the decision granting or denying the motion for a temporary injunction, nothing was heard of the case thereafter. The case to which I have just called attention—Edison Light & Power Company v. Blomquist—is one where the motion for a temporary injunction was granted, and I think that ended the case. The ordinance was held invalid. It is true that the point was not raised in that case. It never has been raised before; and I must say that I was surprised at its presentation here, because I would suppose that, if the determination of a motion for a temporary injunction required a decision upon a question of law, it would be just as much the duty of the court to decide that question as it would be to decide a question of fact. In the case of the Tri-State Telegraph & Telephone Co. v. City of Thief River Falls (C. C.) 183 Fed. 854, I held that the pretended franchise was void. The case of the Minneapolis Street Railway Co. v. City of Minneapolis (C. C.) 189 Fed. 445, related to a service ordinance which was held valid. In every one of these cases a question of law came up, and it never occurred to me before that it was not the duty of the court to decide them.

[6] Finally, it is said that the court has no power to enjoin the publication of the ordinance, because the publication is a legislative act of the council, and with legislative functions the court has nothing to do. Under the charter of the city, after an ordinance has passed the council and been approved by the mayor it becomes a law, in the same way as an act which has been passed by the Legislature and approved by the Governor becomes a law, although it does not take effect by its terms for some time after. The charter provision requiring publication is simply a provision which relates to the time when the ordinance shall take effect. The charter might have said that it shall not take effect until 60 days after approval by the mayor; instead of that, it declared that it should not take effect until after publication. The publication is purely a ministerial act, and not a legislative act of the council. The charter probably imposes upon some officer of the city the duty of sending the ordinance to the official paper for publication.

I will make an order in this case declaring the Heywood ordinance void and of no effect, and enjoining the publication of it, and also enjoining the authorities of the city from taking any action pursuant to it. I shall make no decree as to the validity or invalidity of the

Walker ordinance nor injunction order relating thereto, although, in passing upon the validity of the Heywood ordinance, I have necessarily expressed my opinion as to the validity of the Walker ordinance.