CITY OF BENTON HARBOR v. MICHIGAN FUEL & LIGHT CO.

1. MUNICIPAL CORPORATIONS—GAS—CORPORATIONS—EXPIRATION OF FRANCHISE.
   Where city ordinance granting gas franchise to corporation fixed no time limit or term of its duration, and there was no limitation of that character in the Constitution or statutes at that time, and no limit to term of its corporate existence was fixed in its articles of association, but Constitution as amended in 1889 (article 15, § 10), and statute enacted pursuant thereto (Act No. 166, Pub. Acts 1889) fixed term of corporate life at 30 years with right of renewal under statutory provision, said gas franchise did not expire at end of 30 years.

2. CORPORATIONS—POWERS GRANTED AND DEFINED.
   Corporation's powers are granted to it and defined by its corporate franchise construed in connection with pertinent constitutional and statutory provisions then in force.

3. CONSTITUTIONAL LAW—GAS—FRANCHISES—VESTED RIGHTS.
   Grant by ordinance to corporation of right to occupy streets and alleys of city for purpose of supplying gas to municipality and its inhabitants is grant of property right, and is within protection of the Federal Constitution, so that decisions of Federal courts rather than those of State courts are controlling.

4. GAS—FRANCHISES—CONTRACTS.
   Gas franchise granted by municipality to corporation and accepted by it constitutes contract which courts can neither add to or take from.

5. FRANCHISES—CONSTRUCTION—MUNICIPAL CORPORATIONS.
   Franchises granted by municipalities to corporations to operate public utilities should be construed most strongly against grantees and in favor of public.

6. CONSTITUTIONAL LAW—FRANCHISES—VESTED RIGHTS.
   Franchise accepted by carrying out contemplated undertaking, incident to which large sums of money are expended, must be held to be contractual in nature and to result in vested rights.

As to perpetuity of franchise granted to public service corporation, see annotation in 2 A. L. R. 1105.

7. CORPORATIONS—EXTENDING CORPORATE LIFE EXTENDS FRANCHISE
   GRANTED WITHOUT TERM.
   When corporation renews or extends its charter term under
   statute permitting same, it thereby extends the life of
   municipal franchise granted without term to such corpo-
   ration.

8. GAS—MUNICIPAL CORPORATIONS—INJUNCTION—EQUITY.
   City granting supplemental franchise to gas company to fur-
   nish gas to adjacent city is not entitled to enjoin use of
   pipes in its streets for said purpose at end of 30 years,
   although at time supplemental franchise was granted city
   could not grant franchise for term exceeding 30 years
   (1 Comp. Laws 1915, § 3025), since company has acquired
   vested right under original franchise to continue its pipes
   in the streets, and no injury to city or additional burden
   upon its streets is shown; especially where granting injunc-
   tion would result in injustice rather than equity.

Appeal from Berrien; Warner (Glenn E.), J., pre-
siding. Submitted January 22, 1930. (Docket
No. 94, Calendar No. 34,765.) Decided June 2, 1930.

Bill by City of Benton Harbor, a municipal corpo-
ration, against the Michigan Fuel & Light Company,
a Michigan corporation, to restrain operation of
defendant's plant and business. Plaintiff appeals
from dismissal of bill. Affirmed.

*A. P. Cady* (*I. W. Riford,* of counsel), for plain-
tiff.

*Ryall & Frost* (*H. S. Gray,* of counsel), for de-
fendant.

NORTH, J. This suit was brought by the city of
Benton Harbor to restrain the defendant from
longer occupying and using the city's streets inci-
dent to the conduct of its business as a gas company.
Plaintiff claims the franchise under which defend-

ant asserts the right to operate expired April, 1920, and that the defendant is continuing to use the city's streets without right. This is denied by the defendant. Plaintiff's bill was dismissed in the circuit, and it has appealed.

The question to be adjudicated is whether this franchise was limited to a 30-year period, which has expired. It was originally granted in April, 1890, to the Excelsior Gas Company, a corporation organized under Act No. 109, Pub. Acts 1855, as amended by Act No. 25, Pub. Acts 1889 (chap. 126, Howell's Statutes). The statute vested this corporation, its successors, and assigns with full power to manufacture and sell gas and to lay conductors for conducting gas through the streets, lands, or squares of any city with the consent of the municipal authorities under such reasonable regulations as they may prescribe. The franchise rights granted by the municipality were embodied in an ordinance and in part in the following language:

"SECTION 1. That the Excelsior Gas Company shall have the right to establish and maintain gas works within the corporate limits of Benton Harbor for manufacturing and furnishing gas for lighting and fuel purposes in said village, providing the same are in operation by November 1, 1890.

"SECTION 2. That said company for this purpose shall have the right to lay mains and pipes in any and all streets, lanes, alleys and highways within said village." (The ordinance contains further provisions fixing the general gas rates and giving reduced rates to the municipality for gas used by it.)

It will be noted the ordinance granting this gas franchise fixed no time limit or term of its duration. Neither was there a limitation of that character in the Constitution or statutes of this State at that

time.  On the day the above ordinance was passed, the articles of incorporation of the Excelsior Gas Company were executed.  They were filed two days later.  No limit to the term of the corporate existence was fixed in its articles of association, but the Constitution of Michigan at that date limited the term of corporate life to 30 years, subject, however, to right of renewal under statutory provision.  We quote in part the constitutional provision:

"No corporation, except for municipal purposes (and other purposes not here material), shall be created for a longer time than thirty years; but the legislature may provide by general laws  *  *  * for one or more extensions of the term of such corporation  *  *  * not exceeding thirty years for each extension."  Const. 1850, art. 15, § 10, as amended in April, 1889.

Immediately after the adoption of the constitutional amendment, the legislature passed Act No. 166, Pub. Acts 1889 (2 Comp. Laws 1897, §§ 7130, 7131), which provides:

"That it shall be lawful for any corporation heretofore or hereafter organized under the general laws of this State, engaged in the manufacturing and supplying any town, city or village with gas for lighting the same, whose corporate term has expired, or shall expire by limitation,  *  *  * to direct the continuance of its corporate existence for such further term, not exceeding thirty years from the expiration of its former term, as may be expressed in a resolution for that purpose.  *  *  *

"The renewed term of such corporation shall begin from the expiration of the former term thereof, and the corporation thus renewed shall hold and own all the property held and owned by the corporation before renewal, and all of the rights and privileges belonging thereto."

Act No. 112, Pub. Acts 1889 (3 Comp. Laws 1915, § 11350), provides:

"Any corporation formed under any general law of this State may at any general or special meeting of its stockholders, with the consent of three-fourths of its capital stock, sell and convey all its property and franchises, rights and privileges    *    *    *    to any other corporation formed under the same or any similar law for corporate purposes of the same character."

From the foregoing it is clear that at the time the Excelsior Gas Company incorporated and accepted the Benton Harbor gas franchise, the corporation had a charter for an initial period of 30 years, but it also had the right to continue its corporate existence for a period "not exceeding thirty years from the expiration of its former term," and the statutes above quoted vested in "the corporation thus renewed" all the property, rights, and privileges, held by it before renewal; and gave it power to sell "all its property and franchises    *    *    *    to any other corporation formed    *    *    *    for corporate purposes of the same character."

In 1906 the Berrien County Gas Company was incorporated under the general corporation law of this State, Act No. 232, Pub. Acts 1903. The defendant herein is the Berrien County Gas Company with its corporate name changed to the Michigan Fuel & Light Company. It is conceded to be the possessor by valid transfers of any and all existing rights incident to the franchise granted by the plaintiff to the Excelsior Gas Company. Its initial corporate period of 30 years will not expire until 1936. Plaintiff asserts this corporation has no right to operate under the Benton Harbor gas franchise, it being plaintiff's claim that this franchise terminated in

1920 upon the expiration of the initial 30 year period of the Excelsior Gas Company's corporate life because the franchise was granted to that corporation without words of succession. This contention is not tenable. A corporation's powers are granted to it and defined by its corporate franchise construed in connection with the pertinent constitutional and statutory provisions then in force. *Mason* v. *Perkins,* 73 Mich. 303, 319. The constitutional provision and statutes above quoted gave the Excelsior Gas Company the power to extend its corporate life beyond the initial period of 30 years, and it is conceded that plaintiff cannot and it does not question the validity of the assignment under which defendant holds this franchise. This court has quoted with approval the words of Justice Lurton in *City of Owensboro* v. *Telephone Co.,* 230 U. S. 58 (33 Sup. Ct. 988):

"The grant by ordinance to an incorporated telephone company, its successors and assigns, of the right to occupy the streets and alleys of a city with its poles and wires for the necessary conduct of a public telephone business, is a grant of a property right in perpetuity, unless limited in duration by the grant itself, or as a consequence of some limitation imposed by the general law of the State, or by the corporate powers of the city making the grant." *North Michigan Water Co.* v. *Escanaba,* 199 Mich. 286, 303.

This holding of Justice Lurton is noted and approved in subsequent decisions of the U. S. Supreme Court. See *Russell* v. *Sebastian,* 233 U. S. 195 (34 Sup. Ct. 517, L. R. A. 1918E, 882, Ann. Cas. 1914C, 1282), and cases cited on page 204; also *Covington* v. *Railway,* 246 U. S. 413, 418 (38 Sup. Ct. 376, 2 A. L. R. 1099).

"It is certainly the law of the Federal courts that, where a municipal ordinance grants to a public service corporation the right to occupy or make use of its streets with its mains and pipes for furnishing gas to the inhabitants, but is silent as to the period of time during which such use of the streets is to continue, there being nothing in the Constitution or statutes of the State limiting the period of such grants, the contract is not one at will, which is revocable at the pleasure of either party. (Citing *Northern Ohio Trac. Co.* v. *Ohio*, 245 U. S. 574, 585 [38 Sup. Ct. 196, L. R. A. 1918E, 865], and numerous other authorities.) This doctrine is based upon the theory that it is against common experience to conclude that rational and intelligent men would willingly invest large sums of money in constructing an expensive and extensive plant, which should be subject to destruction at any time by a mere withdrawal by the municipal authorities of the permission granted." *Jamestown* v. *Pennsylvania Gas Co.* (C. C. A.), 1 Fed. (2d) 871.

There is authority sustaining the proposition that, if a franchise, the term of which is not fixed, is granted without words of succession to a corporation whose charter by its own terms or by provision of law is for a fixed duration, the franchise terminates at the expiration of the corporate charter. This is the legal proposition relied upon by plaintiff, citing in its brief decisions from other State courts and also the following cases: *Turnpike Co.* v. *Illinois*, 96 U. S. 63; *Wyandotte Electric-Light Co.* v. *City of Wyandotte*, 124 Mich. 43; *Rockwith* v. *State Road Bridge Co.*, 145 Mich. 455; *Northern Michigan Water Co.* v. *Escanaba, supra*. But these authorities are not in point on the exact question here raised. In the *Turnpike Company Case*, the franchise right was held to have terminated because it was granted without words of succession to a corporation whose cor-

porate term (unlike the instant case) was expressly
limited to 25 years, with no power of renewal or ex-
tension. The *Wyandotte Electric Co. Case* held only
that the franchise there involved had not expired,
and during its term it could not be revoked by the
municipality which granted it. This sustains the
defendant's position in the instant case. The *Rock-
with* suit was determined on the same issues and in
the same manner as the *Turnpike Co. Case.* In
*North Michigan Water Co.* v. *Escanaba* it was held
that the franchise had expired at the end of 30 years
because the original municipal grant was expressly
limited to that term, and the grantee was incor-
porated under an act which provided that renewal
of the corporate existence shall not "be construed
as extending any franchise granted by any munic-
ipality for a period of years longer than the original
grant" (section 11301, 3 Comp. Laws 1915); but
neither of such provisions can be found in the pres-
ent record. There is *dicta* in some of the above
cases which is in accord with plaintiff's contention;
but the question here involved was not before the
court under like conditions in any of the above cases;
and *dicta* there is not controlling here. The rights
here involved are within the protection of the Fed-
eral Constitution; and the decisions of the Federal
courts rather than those of other State courts must
be deemed controlling.

As above noted, the corporate term of the Ex-
celsior Gas Company, to which this gas franchise
was granted, was not fixed or limited because it pos-
sessed the power of renewing and extending the
term of corporate existence. No term limit of the
Benton Harbor gas franchise will be found either in
the franchise itself, in the corporate charter of the
grantee, or in the Constitution or statutes of this

State at that time. The parties agreed upon the terms of their franchise contract, and courts can neither add to nor take from. In passing, it may be noted that there is now in this State a constitutional limitation fixing 30 years as the maximum term of a franchise granted by a municipality; and there is a like constitutional limitation of the term of a corporate franchise but with a statutory right of renewal. Constitution, art. 8, § 29; art. 12, § 3; and 2 Comp. Laws 1915, § 9048.

We are mindful of the rule of construction applicable to grants of this character. They should be construed most strongly against the grantee and in favor of the public. *City of Detroit* v. *Railway,* 172 Mich. 136; *Turnpike Co.* v. *Illinois, supra.* But a franchise accepted by carrying out the contemplated undertaking incident to which large sums of money are expended must be held to be contractual in nature and to result in vested rights which the law protects. *City of Lansing* v. *Michigan Power Co.,* 183 Mich. 400; *New Orleans Gaslight Co.* v. *Louisiana Light Co.,* 115 U. S. 650, 661 (6 Sup. Ct. 252); *Russell* v. *Sebastian, supra;* 28 C. J. p. 551, citing many cases. It has been held by high authority that, when a corporation renews or extends its charter term under provisions similar to those in our statute, it thereby extends the life of a municipal franchise granted without term limit to such corporation. *City of Owensboro* v. *Telephone Co., supra; City of Owensboro* v. *Owensboro Waterworks Co.,* 243 U. S. 166 (37 Sup. Ct. 322). Without determining whether the legislature has the power to limit or repeal the statute which now provides for renewals or extensions of the corporate term (see art. 15, § 1, Const. 1850; also *City of Owensboro* v. *Owensboro Waterworks Co., supra*),

at the expiration of which a municipal franchise of this type would become extinct, we do hold that this Benton Harbor gas franchise is still operative. From both the record and the defendant's brief it appears that the defendant in 1926 consented to an adjustment of rates in a manner agreeable to plaintiff; and such rates have continued in effect. As we understand the record, the defendant then conceded and now concedes it is subject to supervision and rate regulation by the Michigan Public Utilities Commission. The defendant company has property in Benton Harbor of an assessed valuation in excess of $500,000 and it is serving over 3,500 customers. Plaintiff's position is stated in its brief as follows:

"The voters of the city of Benton Harbor have no particular desire that the defendant company shall vacate the streets, and the city authorities have no objections to the present company operating its plants, but the inhabitants of the city of Benton Harbor and the authorities do insist that the defendant company, if it continues to operate on the streets of Benton Harbor, shall operate under a legal franchise, and they only insist that the defendant company vacate the streets in the event that it refuses to make application for and have granted to it a new franchise."

We hold that the defendant company is operating under a valid existing franchise; and we find nothing in the record which would justify granting the injunctive relief sought.

In 1897 the plaintiff city passed a so-called "Supplemental Gas Ordinance" by which the additional right was granted to defendant's predecessor, its successors, and assigns to manufacture gas to be used in the adjacent city of St. Joseph, and to conduct such gas through defendant's pipes laid or to

be laid in the streets of Benton Harbor. At the time this additional franchise was granted, Benton Harbor was incorporated under the statute as a fourth class city, and could not grant a franchise for a term exceeding 30 years. 1 Comp. Laws 1915, § 3025. The 30-year term of the supplemental franchise had expired before this suit was instituted. It does not now affect vested rights acquired under the original franchise. Plaintiff urges that it is entitled to relief at least to the extent of enjoining the defendant from longer conducting through its pipes laid in the Benton Harbor streets gas for use in St. Joseph because the franchise which gave it the right so to do has expired. Since, as above noted, defendant has the right to continue its mains in the streets of Benton Harbor, and since continuing its use of such mains as a means of supplying gas to St. Joseph does not appear from this record to work any injury to plaintiff or to be any additional burden upon its streets, we think an injustice rather than an equity would be done if plaintiff were granted the relief sought. Under such conditions it should be denied. *Edwards* v. *Allouez Mining Co.*, 38 Mich. 46 (31 Am. Rep. 301); *Stock* v. *City of Hillsdale*, 155 Mich. 375. In this connection it may be noted that when the original franchise was granted to the Excelsior Gas Company, its articles of incorporation specified the object of the association was "the manufacturing and supplying of Benton Harbor, *St. Joseph and vicinity* with gas," etc.; and also that the statute under which the grantee of this supplemental ordinance was incorporated had been amended (Act No. 104, Pub. Acts 1895), and as amended provided that all corporations "now organized under the laws of the State of Michigan for the manufacture and sale of gas shall have full power" to furnish gas to

"any adjacent community, city or village" to which its gas can be conducted through pipes or otherwise. There is no equity in this phase of plaintiff's case, and the relief sought in this regard will not be granted.

The decree of the lower court is affirmed, with costs to appellee.

Wiest, C. J., and Butzel, Clark, Sharpe, and Fead, JJ., concurred. McDonald and Potter, JJ., did not sit.