**DUNN et al. v. O'CONNOR et al.**
**No. 6711.**

United States Court of Appeals for the District of Columbia.

Argued Jan. 12, 13, 1937.
Decided Feb. 23, 1937.

Frank F. Nesbit, Hugh H. Obear, Jo V. Morgan, Stuart T. Saunders, Charles W. Clagett, Benjamin S. Minor, H. Prescott Gatley, Arthur P. Drury, Norman Fischer, and Stanley Fischer, all of Washington, D. C., for appellants.

Brice Clagett, Swager Sherley, Charles F. Wilson, George B. Springston, J. Bruce Kremer, Herbert M. Bingham, H. Donald Kistler, Charles E. Wainwright, H. B. Weaver, Jr., and George P. Barse, General Counsel for the Comptroller of the Currency of the United States, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

GRONER, J.

This is an appeal from an order of the District Court dismissing the bill of complaint and the several intervening petitions filed below in this cause. The bill was filed on behalf of plaintiffs as stockholders of Continental Trust Company of Washington, D. C., and other stockholders intervening and making themselves parties. The original plaintiffs did not perfect their appeal and appellants are interveners representing stockholders of Continental Company owning together above 6,000 shares of its stock. The original defendants were the Comptroller, the receiver of Continental, receiver of Commercial National Bank, and Continental itself. Pending hearing the bill was amended, making the receiver of District National Bank, the receiver of United States Savings Bank, and Loudoun National Bank of Leesburg, Va., parties defendant. Service of process against the last named was quashed. All the defendants except Continental filed motions to dismiss. Continental filed no pleading. The court below sustained the motions to dismiss. A condensed statement of facts follows:

Continental was organized January 30, 1912, under the laws of the District of Columbia with fully paid capital of $1,000,000. Thereafter and until January 18, 1930, it operated in the city of Washington as a trust company and bank of deposit. On the last-named date it entered into a written agreement with Commercial by which Commercial agreed to buy and Continental to sell for $100,000 in cash all the deposits of Continental, aggregating $2,600,000, and Continental agreed to place with Commercial to cover depositor liability all its assets except the cash payment of $100,000, "said assets to be liquidated by The Commercial National Bank, without compensation, in conjunction with a committee to be appointed by the Continental Trust Company, and the excess beyond that necessary to cover such deposit liability, returned to the Continental Trust Company." Thereafter Continental ceased to do a banking business, but simultaneously with the transaction and from time to time thereafter during 1930 borrowed from Commercial and from the other defendants, United States Bank, District Bank, and Loudoun National Bank, large sums of money for the purpose of purchasing stock of Commercial and also for the purpose of purchasing its own stock. As a result, it became the owner of 4,000 shares of Commercial stock and an unstated number of shares of its own stock. It received from time to time dividends aggregating $105,000 on Commercial stock and presumably distributed these to its own stockholders as dividends. Con-

tinental's depositors acquiesced in the arrangement transferring their accounts to Commercial and accepted Commercial with respect to their deposits; and the liquidation of the assets of Continental proceeded under the terms of the contract and resulted—as is now claimed—in a loss to Commercial of around $600,000, which is asserted as a liability of Continental.

In March, 1933, the Comptroller, having previously taken possession of Commercial, ordered a 100 per cent. assessment on its stockholders, and in March, 1933, took possession of Continental. The bill alleges that the receiver of Commercial is demanding of the receiver of Continental the sum of $400,000 on account of the 100 per cent. assessment on 4,000 shares of Commercial stock in the name of Continental and that the Comptroller has tentatively rejected this demand, but that in order to provide funds to pay other sums ascertained by Comptroller to be due by Continental, the Comptroller has ordered an assessment of 100 per cent. against the stockholders of Continental.

Appellants, as stockholders of Continental, resist the assessment on the grounds—

First, that the double liability of Continental stockholders, under the provisions of the District of Columbia laws with relation to the incorporation of trust companies, is a general liability to creditors and a direct property right of such creditors which the Comptroller is without authority to enforce.

Second, that the purchase of stock of Commercial by Continental was ultra vires and therefore does not constitute a legal claim upon which a liability for assessment on Continental shareholders can be predicated.

Third, that the contract between Commercial and Continental was an outright sale and that an alleged indebtedness of several hundred thousand dollars growing out of the liquidation of assets transferred by Continental to Commercial does not constitute a valid claim against Continental.

Fourth, that the debts evidenced by notes alleged to be due United States Bank, District National, Loudoun National Bank, and Commercial were incurred by Continental for the purpose of purchasing Commercial stock and that the lending banks had full knowledge of this ultra vires purpose, as a result of which the

debts are uncollectible—in consequence of all of which Continental was free of debt and the Comptroller was without authority in assessing the stockholders.

Enough has been said to explain the prayers of the bill—

(a) For an injunction against the collection of the assessment against the stockholders of Continental;

(b) For the invalidation of certain debts of Continental;

(c) For the cancellation of the receiver's demand against Continental on account of its ownership of stock of Commercial;

(d) For accounting between Continental and its alleged creditors; and

(e) For a declaratory judgment as to the rights and liabilities of appellants and other stockholders of Continental.

It appears from the pleadings that the claims against Continental which have been allowed by the Comptroller amount to $375,050. The itemized statement of these includes the note loans to Continental by Commercial and a little less than a hundred thousand dollars of note loans by the other defendant banks to Continental and some two thousand dollars of sundry indebtedness. But the claims against Continental which the Comptroller has allowed, amounting, as we have seen, to $375,050, do not include any sum of money claimed as arising out of the contract between Continental and Commercial of January 18, 1930, or the $400,000 assessment of Continental as a stockholder of Commercial. As to the contract, the Comptroller has authorized and directed the institution of a suit for an accounting, and has rejected the $400,000 stockholder assessment claim against Continental.

The District Judge held that the Comptroller was empowered under the District of Columbia statutes to impose and collect the double liability of stockholders of Continental and that his action in making the assessment was neither illegal nor arbitrary. He held as to the debts for borrowed money due the defendant banks, including Commercial, that Continental had received the benefits of the money and was bound on principles of equity and justice to its repayment; and that, inasmuch as there was a pending suit to ascertain the contract rights as between Continental and Commercial, which it would require time to determine, nothing growing out of

that transaction would justify interference with the assessment; and, finally, that if it should later develop that the amount of the assessment was more than necessary to pay Continental's debts, provision was made by statute for the return of the excess collected.

The first question to be decided, because it goes to the root of the controversy, is whether the District of Columbia laws authorize the Comptroller to enforce the double liability of stockholders of Continental. Appellants, as we have seen, deny that such authority exists.

Continental was organized as a trust company January 30, 1912, pursuant to the provisions of subchapter 11 of chapter 18 of the Code of Laws of the District of Columbia (section 715 et seq.), 31 Stat. 1303 (now D.C.Code 1929, T. 5, § 341 et seq.). In addition to the ordinary duties and functions of a trust company, the statute authorizes a company so organized to accept deposits of money upon terms to be agreed upon with its depositors. Section 720 (now section 347 of title 5, 1929 Code) provided:

"All companies organized under this chapter, or which shall, under the provisions hereof, become entitled to transact the business of a trust company, shall report to the Comptroller of the Currency in the manner prescribed by sections 5211, 5212 and 5213 of the Revised Statutes of the United States in the case of national banks, and all acts amendatory thereof or supplementary thereto, and with similar provisions for compensating examiners, and shall be subject to like penalties for failure to do so. The comptroller shall have and exercise the same visitorial powers over the affairs of the said corporations as is conferred upon him by section 5240 of the Revised Statutes of the United States in the case of national banks. He shall also have power, when in his opinion it is necessary, to take possession of any such company for the reasons and in the manner and to the same extent as are provided in the laws of the United States with respect to national banks."

Section 298 of title 5 of the Code of 1929 provides precisely similar rules and conditions applicable to banking institutions incorporated outside and operating within the District, and includes trust companies chartered under District laws. We have had occasion to construe the last-mentioned section in four cases arising since the date of the so-called bank holiday. [1]

In the Allman Case the bank had been incorporated in Arizona and was operating exclusively in Washington City. The Comptroller took possession because of insolvency and made an assessment. The Arizona law imposed double liability, but confined the right of recovery to a receiver appointed in Arizona. We held this defense to the assessment insufficient, on the ground that the District of Columbia statute conferred on the Comptroller the same authority to enforce the stockholder liability as if the foreign bank were a national bank. In other words, that the double stockholder liability created by law in the state of incorporation could be enforced by the Comptroller's receiver under the District of Columbia law notwithstanding the requirement as to manner of enforcement contained in the Arizona law.

In the Harper Case the bank was also an Arizona corporation doing business exclusively in Washington City. On its insolvency, as in the previous case, the Comptroller took charge and ordered an assessment; and the defense was that under the Arizona statutes there was no obligation on a stockholder to pay anything, until the precise amount had been determined by a court of competent jurisdiction. We denied this contention and, referring to section 298, said this provision is notice to every banking organization incorporated under the laws of one of the states that, in coming into the District of Columbia to do business, it submits itself to the supervision and control, both in operation and in insolvency, of the Comptroller to the same extent as if it were a national bank.

And in the Offutt Case, referring to the two cases previously discussed, we said:

"The effect of these two cases is to hold that wherever the double liability of a stockholder is created by charter or the law of the state of incorporation, and the corporation engages in business in the District of Columbia, the liability may be enforced in the District by a receiver appoint-

[1] Washington L. & T. Company v. Allman, 63 App.D.C. 116, 70 F.(2d) 282; Harper v. Moran, 64 App.D.C. 210, 76 F.(2d) 980; Hamilton v. Offutt, 64 App. D.C. 385, 78 F.(2d) 735, 737; Hamilton v. Bergling, 66 App.D.C. 83, 85 F.(2d) 249.

ed by the Comptroller, in a suit against the stockholder."

The Offutt Case differed from the other two in this respect—that neither in the charter of the bank nor under the law of Virginia, in which state it was incorporated, was there any provision for double stockholder liability; and we held that, if no such liability was imposed by the laws of the state of incorporation or by charter, there was no statute in the District of Columbia which would create it. Explanatory of this we said:

"In our opinion, section 298 of the Code, supra, which authorizes the Comptroller to take possession of an insolvent state bank in the District of Columbia for the reasons and in the manner and to the same extent as is provided by the laws of the United States with respect to national banks, refers to procedure rather than to substantive liability. Unquestionably, we think, it incorporates all the national bank acts which have to do with the machinery of administration in the case of insolvent banks and gives to the Comptroller the same control and management of an insolvent state bank operating in the District of Columbia as in the case of national banks. It likewise includes all provisions for the collection of debts and the distribution of assets, and as well the enforcement of the liability of stockholders. But the language of the statute nowhere creates a liability where none exists. R.S. § 5151, as amended [12 U.S.C.A. § 63], which is the section of the general law establishing double liability of bank stockholders, is by its terms confined to national banks, and there is nothing in D.C.Code 1929, T. 5, § 298, which will sanction our reading it into that section."

The Bergling Case involved a West Virginia bank operating in the District of Columbia. Under the West Virginia law, a stockholder is liable to creditors on obligations accruing while he is a stockholder to an amount equal to the par value of the shares of stock held by him. And so, applying the rule announced in the Offutt Case, we said that the stockholder liability—and the extent of it—was fixed by the laws of West Virginia, and hence the burden was on the receiver to show that the liabilities which made the bank insolvent accrued during the time the stockholder owned her stock.

In this case appellants say that the rule in the Allman and Harper Cases is not ap-

plicable for the reason that Continental was organized as a District of Columbia trust company and that the District of Columbia statute (section 361, title 5), authorizing incorporation, created a stockholder liability as an independent and direct property right of creditors of the company and in that respect is different from the liability of stockholders in a national bank created by R.S. § 5151, as amended (12 U.S.C.A. § 63), which appellants say is an asset of the trust estate and which, with the other assets, constitutes a trust fund for the creditors' benefit. Section 361 of title 5, D.C.Code1929, provides:

"All stockholders of every company incorporated under this chapter, * * * shall be severally and individually liable to the creditors of such company to an amount equal to and in addition to the amount of stock held by them respectively for all debts and contracts made by such company."

This liability, appellants say, is an individual asset of the creditors and not an asset of the trust company, and that, while the Comptroller's receiver holds and administers the assets which are specifically made a part of the trust estate and is trustee as to these assets, he is not trustee for the creditors of their direct and primary rights which exist independently of the bank and on which, as they contend, the creditors may sue without making demand on the Comptroller, the bank, or the receiver. The point is interesting, and there are cases both ways under state statutes creating double stockholder liability. The reasons generally stated by those courts which hold that the added liability is not a corporate asset but a secondary liability flowing directly to the creditors are, that the fact the corporation has passed to a receiver does not diminish the degree of liability of the stockholder to a creditor; that the creditor stands on an independent basis, and the stockholder is bound to answer to him; or, that the statute, declaring the liability shall be to creditors, precludes intermeddling by the receiver; or, again, that the statute having conferred the right on the creditor, it is his absolutely.

In some states the stockholder liability, in the case of banks, is created in favor of depositors, and cases hold that, without special authority to the receiver to collect and impound this asset for the benefit of depositors, there is no authority for such

action on his part. Cf. Wincock v. Turpin, 96 Ill. 135. In Dutcher v. Marine National Bank, Fed.Cas.No.4,203, 12 Blatch. 435 (a bankruptcy case), it was held that such added liability is a liability to, and in favor of, the creditors of the corporation and is not a liability to the corporation itself, nor in any legal sense for the benefit of the corporation or an asset of the corporation, and hence the assignee in bankruptcy has in it no legal or equitable title, right, or interest. And in Fidelity Ins., Trust & Safe-Deposit Co. v. Mechanics' Bank (C.C.A.) 97 F. 297, 56 L.R.A. 228, it was held that under the Constitution of Kansas (1859, art. 12, § 2), providing that "dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned," etc., the liability thus created, being to the creditors, could not be enforced by a receiver appointed for the corporation.

But if we adopt the view of appellants in this regard, it will not bring us to the conclusion they insist upon, and for this reason: The constitutional or statutory provisions construed in the cases we have mentioned and those relied on by appellants were either identical with or substantially like R.S. § 5151, as amended (12 U.S.C.A. § 63), creating the liability of stockholders in a national bank. The double liability created by that section is, strictly speaking, no more the asset of the corporation than the double liability created by the District of Columbia statute with relation to trust companies. In either case it is an asset of creditors and not of the corporation. And it may well be argued—if indeed it may not be conceded—that the stockholder liability in a national bank in insolvency could be enforced by a creditor's suit just as it may be when the bank is in voluntary liquidation (12 U. S.C.A. § 65), except for the fact that Congress in the National Bank Act has expressly provided a system for collection through the Comptroller's receiver of assets of the insolvent bank, and this stockholder liability as well.

"Such receiver, under the direction of the comptroller, shall take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders." 12 U.S.C.A. § 192.

This language was intended and has been held in at least a hundred cases to provide a definite and uniform plan for the collection of the assets of an insolvent bank, and of the double stockholder liability, and for distribution of the whole fund among creditors. And, while it may be safely said that the National Bank Act confers on the receiver or the Comptroller, or both, no greater powers than the bank itself had before insolvency, as to its assets, it has never been questioned, and, of course, cannot be questioned, that the above-quoted provision authorizing the Comptroller to enforce stockholder liability vests that power exclusively in that official and makes this liability a trust fund for creditors. "The statute which creates it may also declare the purposes of its creation, and provide for the manner of its enforcement." Pollard v. Bailey, 20 Wall. 520, 526, 22 L.Ed. 376.

In the case we are now considering the local statute applicable to trust companies expressly brings such companies under the aegis of those provisions of the National Bank Act creating the authority and prescribing duties of the Comptroller as to national banks. The intention of the statute is obvious and may be described in a single sentence—its purpose is to make trust companies and state incorporated banks doing business in the District of Columbia subject to the authority of the Comptroller both in operation and insolvency. The statute requires that such trust companies and banks file reports in like form as national banks, be examined by national bank examiners, be subject to the visitorial powers of the Comptroller, and be taken over by the Comptroller when insolvent "for the reasons and in the manner and to the same extent" as national banks. And in the Offutt Case we said the words "for the reasons" include insolvency, impairment of capital, nonmaintenance of reserve, forfeiture of franchise, and the other grounds which Congress has named as sufficient to authorize a declaration of insolvency in the case of a national bank, and that the words "in the manner and to the same extent" include the right to appoint a receiver, collect the debts,

sell the property, and to take all necessary steps in the liquidation of the affairs of the bank, including the enforcement of personal liability of stockholders where there is such personal liability. As a result of this, we entertain no doubt that the local statute, by reference, embraces also that provision of the National Bank Act which authorizes a receiver, under the direction of the Comptroller, to enforce the individual liability of stockholders. Here there is individual liability, and though it runs to creditors, yet by the express terms of the bank statute, made a part of the local act, it may be enforced by the Comptroller's receiver for the benefit of creditors. And in this view we think it is clear that the language of the District of Columbia act of incorporation "liable to the creditors" does not create an independent and direct property right of creditors enforceable only by them in an equity suit, but is a right which, though created for their benefit, accrues to the Comptroller and through him to his receiver, by whom alone it is enforceable in the administration of the trust estate.

██ Entertaining these views, we think it follows that the Comptroller's authority and power to take possession of Continental was precisely the power given him by statute to take possession of a national bank; and, if we are correct in this position, then it follows equally that under the powers vested in him by law he was authorized to investigate the condition of the bank and declare it insolvent, and to appoint a receiver and make an assessment against the stockholders. And nothing is now more firmly established than the rule that the decision of the Comptroller as to insolvency and the necessity of an assessment is not subject to attack or open to review except for fraud or such abuse of authority as amounts to fraud. Harper v. Moran, supra.

"It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, and if only a part, how much, shall be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it. It is not to be questioned in the litigation that may ensue. He may make it at such time as he may deem proper, and upon such data as shall be satisfactory to him." Kennedy v. Gibson, 8 Wall. 498, 505, 19 L.Ed. 476.

Here the record sufficiently shows insolvency, and in that case, whether it be little or big, is beside the question. The District Court was, therefore, correct in refusing to enjoin the enforcement of the assessment.

And this leaves for decision only the question whether the District Court was correct in dismissing the entire bill. As we have seen, the insolvency of Continental grows out of claimed indebtedness which may be classified under four separate headings:

1st, The demand against it of $400,000 as the holder of 4,000 shares of stock in Commercial;

2nd, The indebtedness to Commercial, if any, growing out of the liquidation contract of January 18, 1930;

3rd, Items aggregating in excess of $350,000 growing out of loans made to Continental by Commercial, Loudoun Bank, District Bank, and United States Bank; and

4th, Sundry miscellaneous indebtedness aggregating $2,000.

██ The pleadings show that the Comptroller, acting for Continental, has tentatively rejected the $400,000 item as invalid and has wholly disallowed the claim of the receiver of Commercial for that item, and we assume that the basis of the rejection is that Continental could not in law become a stockholder in Commercial. Assuming the facts to be as stated, we think the ruling of the Comptroller in this respect is correct. Continental, as a District of Columbia trust company, was not authorized to purchase and hold as an investment shares in another corporation. Section 276 of title 5, Code of 1929, makes it unlawful for any company to use any of its funds in the purchase of any stock in any other corporation. We think this is a statement of general policy and is applicable to all District of Columbia corporations.[2] But even without this express prohibition the purchase by Continental of this large block of stock of Commercial was ultra vires and void, notwithstanding the provision in Continental's articles of incorporation purporting to authorize it to

---

[2] Except where there is an express statutory provision, as for instance in the case of public service corporations.

hold shares of stock in another corporation; and this, for the reason that the statutory authority under which Continental was incorporated specifies in precise and exact terms the objects and purposes for which a charter of incorporation to a trust company may be granted by the Commissioners of the District. And these objects and purposes embrace the extent and limits of the powers acquired. The prohibition is implied from the failure to grant the power. California Nat. Bank v. Kennedy, 167 U.S. 362, 367, 17 S.Ct. 831, 42 L.Ed. 198. Consequently, the privileges specified in the legislative act cannot be added to or enlarged by the instrument of incorporation approved by the Commissioners. Nor can there be any doubt that where there is conflict between the articles of incorporation and the general law, the latter governs. Thompson on Corporations (2d Ed.) § 174. The enumeration of unauthorized powers is surplusage. Thompson, supra. Statutory powers cannot be enlarged, or privileges or immunities gained, merely by including them in the articles of association. Thompson, § 191. Or, as the rule is stated in De La Vergne Refrigerating Mach. Co. v. German S. I., 175 U.S. 40, 20 S.Ct. 20, 24, 44 L.Ed. 65:

"But as the powers of corporations, created by legislative act, are limited to such as the act expressly confers, and the enumeration of these implies the exclusion of all others, it follows that unless express permission be given to do so, it is not within the general powers of a corporation to purchase the stock of other corporations for the purpose of controlling their management."

And by Mr. Justice White in California Nat. Bank v. Kennedy, 167 U.S. 362, 367, 17 S.Ct. 831, 833, 42 L.Ed. 198:

"The cases * * * recognize as sound doctrine that the powers of corporations are such only as are conferred upon them by statute."

See, also, Eastern P. R. Co. v. Vaughn, 14 N.Y. 546; Becket v. Uniontown B. & L. Association, 88 Pa. 211; City of Benton Harbor v. Michigan F. & L. Co., 250 Mich. 614, 231 N.W. 52, 71 A.L.R. 114. In the case of Concord First National Bank v. Hawkins, 174 U.S. 364, 19 S.Ct. 739, 43 L.Ed. 1007, the Supreme Court held that, where one national bank had purchased for investment the shares of stock of another national bank, an assessment levied by the Comptroller on such owned stock was not collectible.

The second item of alleged indebtedness grows out of the transaction whereby Continental undertook to turn over to Commercial its depositors and through that company to liquidate its bills receivable, etc. The pleadings show that the Comptroller has authorized a suit for an accounting and, while we have not before us all the objects of that suit, we assume that the Comptroller has directed the receiver of Continental to contest fully the claim of Commercial to any sum of money alleged by the latter company to be due under the contract. And we further assume that the question of whether this is or is not a valid indebtedness will be submitted to a court of competent jurisdiction for final determination. It is the right and duty of the receiver of Continental to conduct these proceedings. The receiver represents the bank, its stockholders, and creditors, and in that capacity is authorized not only to collect the assets, but to resist claims made by alleged creditors of the trust estate. Some suggestion has been made that, because the Comptroller is administering the affairs of both banks he may fail to pursue Continental's claim of invalidity in this debt as fully as might be the case if the stockholders were themselves in control of the litigation. But this suggestion is without any basis of support, and if later the situation should change, we have no doubt that the trial court on application of the stockholders' committee would, upon a proper showing, permit them to intervene and be made parties in the suit.

Item 3 embraces sundry loans made by four banks, including Commercial. Appellants insist that these loans were not contracted in the ordinary course of business and therefore form no legal basis for an assessment. In other words, that they are debts and liabilities contracted ultra vires the trust company. The notes evidencing the debts were given, it is charged, to secure money to be used by Continental for the purchase of stock in Commercial, and it is insisted that such purchases were ultra vires and that because the lending banks had knowledge of the purpose of the loans, no recovery can be had against Continental. The Comptroller, on the other hand, has acknowledged the claims of the several banks under this item as valid, enforceable claims

against Continental, and the assessment against the stockholders of Continental is based largely on the assumption of the validity of these debts. But we do not think the decision of the Comptroller in the respects we have mentioned is final or binding on the stockholders of Continental. It may be that his decision relating to allowance of debts and obligations incurred by Continental lawfully and in the ordinary course of business, cannot be questioned,—as to which, however, we express no opinion since that is not our present problem. But in the case of debts and engagements alleged to have been unlawfully incurred, his decision is certainly not final beyond all re-examination. "But even his decision does not determine the liability except as to contracts, debts, and engagements of the bank lawfully incurred." McClaine v. Rankin, 197 U.S. 154, 159, 25 S.Ct. 410, 411, 49 L.Ed. 702, 3 Ann. Cas. 500; citing Schrader v. Manufacturers' Nat. Bank, 133 U.S. 67, 10 S.Ct. 238, 33 L.Ed. 564; Wyman v. Wallace, 201 U. S. 230, 26 S.Ct. 495, 50 L.Ed. 738. Hence in this case since, as we have seen, the purchase of shares of stock by one corporation in another corporation, to be held as an investment, is ultra vires, a question may very well arise whether, in the light of the allegations charging full knowledge by the lending banks, a claim growing out of this indebtedness should be allowed. Cf. Standard Savings & Loan Association v. Aldrich (C.C.A.) 163 F. 216, 20 L.R.A. (N.S.) 393. But obviously we cannot answer this question in the present state of the record, for there are not sufficient facts before us by which to determine Continental's liability for this or perhaps for other reasons to respond to the claims of the creditor banks. We therefore express no opinion on the subject, but since, as we have seen, the Comptroller has declared the debts to be valid and refused to permit the receiver to take any action to avoid their payment, we think the District Court was in error in dismissing appellants' bill so far as the same was intended to secure a legal determination of the validity of these claims. There can be no doubt, that in a case charging that the debts were created out of the ordinary course of the business, created ultra vires the corporation, the stockholders of Continental have an interest entitling them to maintain a suit and, if a proper case therefor is made, have a declaratory judgment and final decree determining the respective rights of the par-

ties. Re Chetwood, 165 U.S. 443, 17 S.Ct. 385, 41 L.Ed. 782. And especially, where the receiver on notice declines to act. O'Connor v. Rhodes, 65 App.D.C. 21, 79 F.(2d) 146, Id., 297 U.S. 383, 56 S.Ct. 517, 80 L.Ed. 733.

We therefore affirm the decree of the court below so far as it refused to enjoin the collection of the assessment ordered by the Comptroller; and we reverse as to the dismissal of the bill as against Commercial, District National, and United States Bank; and remand the case to the court below with instructions to dismiss as to O'Connor, Comptroller, and Moran, Receiver of Continental, but to maintain the bill and the amended bill as to the other defendants, with leave to any party to amend the pleadings so as fairly to present the question of the validity or the invalidity of the claims of the several banks against Continental growing out of notes held for money borrowed for the purchase by Continental of the stock of Commercial for investment.